TIBERI LAW OFFICE
Todd J. Tiberi (CA Bar No. 243967)
  *ttiberi@tiberilaw.com*
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Phone: 917-573-2802
Fax: 805-347-7933

Attorney for Plaintiff
DEN-MAT HOLDINGS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| DEN-MAT HOLDINGS, LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>CAO GROUP, INC.,<br><br>             Defendant. | Case No.: 2:18-cv-6358<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Den-Mat Holdings, LLC ("DenMat") brings this action seeking an order compelling defendant CAO Group, Inc. ("CAO Group") (1) to forego suing it for patent infringement because it has forfeited such right in view of surviving provisions of a contract between it and CAO and (2) to return $200,000.00 to DenMat that it improperly induced DenMat to pay. DenMat rightfully terminated the contract for each of two independent reasons: (a) CAO committed uncured material breaches of the contract, and (b) CAO anticipatorily repudiated the contract. DenMat also seeks a declaratory judgment that its termination was proper in view of CAO's breaches.

## INTRODUCTION

1. In 2015, CAO sued DenMat for patent infringement over certain patents related to soft-tissue diode lasers made and sold by DenMat (the "Patent Lawsuit"). DenMat sells the lasers to dentists and other licensed dental professionals. The DenMat laser systems consist of a laser-emitting unit and disposable surgical laser tips. The Patent Lawsuit was filed by CAO in Utah and then transferred to this District in October 2015.

2. The Patent Lawsuit was stayed for some time during proceedings at the U.S. Patent and Trademark Office. The stay was lifted in August 2017, after which DenMat and CAO initiated negotiations in an attempt to settle the Patent Lawsuit.

3. After more than four months of negotiations, the parties achieved a settlement of the Patent Lawsuit and that case was dismissed in October 2017. The settlement consisted of two new contracts between DenMat and CAO, each dated November 1, 2017: (a) "Manufacturing and Service Agreement" (the "Manufacturing Agreement; and (b) "Nonexclusive Patent License" (the "License Agreement"). The gravamen of the settlement, and the two contracts, is that CAO agreed to take over manufacturing of DenMat's dental lasers and supply them to

DenMat as a contract manufacturer. In exchange, DenMat would cease making lasers for itself and make certain payments to CAO contingent upon milestones to be met by CAO. In addition, DenMat received a perpetual, royalty-free license to CAO's laser patents, including the patents that were the subject of the Patent Lawsuit. Each party had the right to terminate the Manufacturing Agreement in the event the other committed an uncured material breach and, if DenMat so terminated, it would retain the royalty-free license under the License Agreement. (Manufacturing Agreement § 12.1(c) & 12.2(b)).

4. CAO committed multiple uncured material breaches of the Manufacturing Agreement. In fact, CAO refused to perform under the Manufacturing Agreement and unequivocally repudiated it by declaring it "dead on arrival" more than five months after it was signed. Despite express contract language prohibiting it from doing so, CAO insisted that it needed to deviate from DenMat's approved vendor list for laser components, source different types of components, and in some cases, redesign critical components entirely, in order to generate increased profits for itself under the Manufacturing Agreement. CAO also refused to acknowledge that the royalty-free license to DenMat under the License Agreement continues in full force and effect. Rather, CAO continues to threaten to sue DenMat once again for patent infringement.

5. Accordingly, after proper notice and the expiration of the cure period, DenMat terminated the Manufacturing Agreement pursuant to § 12.1(c) therein; the royalty-free license under the License Agreement continues in full force and effect.

## PARTIES

6. Plaintiff DenMat is a citizen of the States of California and Delaware. DenMat has its principal place of business in Lompoc, California and is a limited liability company under the laws of the State of Delaware.

7. Upon information and belief, Defendant CAO is a citizen of the State of Utah. CAO is incorporated in Utah and has its principal place of business in West Jordan, Utah.

8. DenMat was founded in 1974 in Santa Maria, California and is in the business of making and selling equipment and materials to licensed dental professionals, including soft-tissue diode dental lasers used by dentists in the treatment of various oral conditions.

9. Upon information and belief, CAO was founded in 2000 in West Jordan, Utah and is a manufacturer of various equipment, including dental lasers, which it has manufactured for sale by itself and others since at least 2000.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. CAO is subject to the jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this claim occurred in California, and the parties contractually consented to the jurisdiction of this Court. (Manufacturing Agreement, § 13.5).

11. Venue is proper in this District under 28 U.S.C. § 1391 and is proper in this Division pursuant to General Order 16-05, § I.B.1.a.(1)(c), because DenMat resides in the Western Division, a substantial part of the events giving rise to this claim occurred in this Division, and the parties contractually consented to venue in this Division. (Manufacturing Agreement, § 13.5).

## FACTS

12. Because DenMat's lasers, like all dental lasers, are highly regulated medical devices subject to requirements by the U.S. Food & Drug Administration, the European Union Medical Device Directive (Regulation (EU) 2017/745), and

other regulatory bodies, it is critical that they be manufactured using only confirmed, safety-tested components from approved component vendors.

13. In addition, lasers and their components are subjected to exacting and strict electrical safety standards and testing set forth by, *inter alia*, the Institute of Electrical and Electronics Engineers ("IEEE"). The swapping out or substitution of a single component can cause the lasers to fail safety testing, which could cause both human injury and require DenMat to withdraw its lasers from markets in the U.S., E.U., and elsewhere.

14. For these reasons, during negotiations with CAO, DenMat sought contractual provisions (1) requiring CAO to make DenMat's lasers according to DenMat's existing specifications using DenMat's tested and approved components and vendors, and (2) prohibiting CAO from changing any components, vendors, or work instructions. CAO expressly agreed to these contract provisions.

15. Accordingly, the Manufacturing Agreement set forth (a) express terms prohibiting CAO from making any changes to the lasers, including "any bills of materials, vendors, or work instructions without prior written approval of DenMat," (Manufacturing Agreement, § 9.5); and (b) express terms requiring CAO to make the Products "in accordance with DenMat's specifications, drawings, and technical requirements, *using approved vendors and components*," *id.* (emphasis added).

16. The parties also negotiated, at length, the price that CAO would charge DenMat for the lasers. During the negotiations, CAO told DenMat that it had "taken apart" the DenMat lasers and knew exactly how to make them and how to determine the cost to make them. CAO also emphasized that it has manufactured dental lasers for more than twenty (20) years, including for some of the larger laser sellers in the dental market. CAO assured DenMat that making its lasers would be simple and well within its manufacturing competency. The parties eventually

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     Page 5 of 12

agreed on exact pricing that CAO would charge DenMat to make its lasers. (Manufacturing Agreement, § 5.2).

17. The Manufacturing Agreement and the License Agreement were signed on or about November 1, 2017. Thereafter, DenMat expended considerable efforts to help CAO commence manufacturing of the DenMat lasers.

18. On November 17, 2017, DenMat sent a team consisting of its Chief Operating Officer, Senior Director of Manufacturing, and its Quality Assurance manager to CAO's facility in Utah to assist the CAO team. That same day, DenMat established a direct File Transfer Protocol ("FTP") site so that the CAO team could have direct access to engineering drawings, component specifications, work instructions, vendor lists, quality control processes, and other information that would be helpful in CAO's manufacturing of the DenMat lasers.

19. On November 28, 2017, DenMat arranged for the CAO team to participate in a conference call with DenMat's outsourced team of electrical engineers so that CAO could conduct a question and answer session related to technical specifications of the DenMat lasers.

20. On December 8, 2017, DenMat hosted members of CAO's team at DenMat's facility to develop an inventory transfer plan so that CAO could soon begin building the DenMat lasers and sourcing the required components. On or about January 5, 2018, DenMat shipped to CAO, at no charge, components so that it could perform a pilot build of a few laser units. In addition, DenMat built and sent, at no charge, a variety of production and test fixtures to CAO to facilitate the pilot build.

21. On February 20, 2018 DenMat sent two of its laser manufacturing technicians, including its lead laser technician to CAO's facility in Utah to assist them in the qualification and validation process required for CAO to manufacture lasers.

22. DenMat manufacturing, operations, and regulatory personnel engaged in dozens of telephone conferences and email exchanges with CAO personnel, totaling hundreds of person-hours.

23. In November 2017, in good faith belief that CAO would honor the contract, DenMat paid CAO $200,000.00 as Payment No. 1 per the terms of the License Agreement. (License Agreement, § 4).

24. Despite DenMat's efforts to help CAO commence manufacture of the lasers, and despite DenMat's agreement to extend certain deadlines, CAO missed the delivery deadlines for the lasers and continued to insist that it be allowed to find its own components and vendors for the parts to make the lasers.

25. On or about May 16, 2018, Densen Cao, the Chief Executive Officer of CAO, surprised DenMat by telling DenMat's Chief Executive Officer, unequivocally, that it no longer will honor the contract. In fact, Cao told DenMat that the contract was "D.O.A.," i.e., dead on arrival. The reason for CAO's repudiation became clear that same day.

26. By letter dated May 16, 2018 from CAO to DenMat, CAO stated: "CAO has determined that the act of assuming manufacturing is simply *not economically viable under the terms* of continued purchase of parts and materials exactly as DenMat is doing now. *For this activity to be profitable*, *CAO must make some adjustments to the sourcing of components for these products*." *(*Proposal for Next Steps in CAO Group's Assuming Manufacture of DenMat Lasers, ¶ 1 (emphasis added).

27. In other words, after lengthy negotiations with CAO, which had induced DenMat to enter into a settlement and manufacturing contract on the false premise that CAO would perform, CAO suddenly announced to DenMat that it would not, in fact, perform its duties and obligations. CAO repudiated despite the

fact that nothing changed during the time of negotiating, signing, and performance due under the contract—except CAO's desire to make more money out of the deal.

28. On or about June 4, 2018, Densen Cao told DenMat that CAO "definitely is not able to perform [under the contract] if we have to use your vendors."

29. On or about June 22, 2018, CAO demanded that DenMat pay it more for the lasers than the bargained-for contractual prices set forth in the Manufacturing Agreement—again, simply so that CAO could make more money from the deal. DenMat declined and requested that CAO honor the terms of the contract as written and agreed upon.

30. As of the filing date of the instant action, CAO still has not fulfilled even the Initial Purchase Order that it had represented it would fulfill no later than March 1, 2018.

31. DenMat repeatedly asked CAO to perform under the terms of the Manufacturing Agreement, and even agreed that as long as CAO initially made the lasers under the terms of the contract, DenMat would consider, in good faith, allowing CAO to use substitute components and vendors at some point in the future, as long as such substitutes did not compromise the safety, efficacy, and regulatory approval status of the lasers.

32. CAO adamantly refused and insisted that it be allowed unilaterally to find any components and vendors, and asked for an increase to the negotiated price for the laser units, that would allow it to make more money under the manufacturing contract.

33. On May 29, 2018, DenMat sent a letter to CAO acknowledging CAO's anticipatory repudiation of the contract. (Letter dated May 29, 2018 from T. Tiberi to T. Jones).

34. CAO continued to insist it could choose its own components and vendors. Revealing what appear to be CAO's true intentions, it threatened to "re-file" the patent litigation lawsuit against DenMat, insisted on keeping DenMat's initial good-faith $200,000.00 payment, and demanded DenMat pay it a 10% royalty on all of its laser products—despite the clear terms of the License Agreement setting for a royalty-free license where, as here, CAO materially breached the Manufacturing Agreement.

35. On June 4, 2018, DenMat provided formal written notice to CAO of its material breaches of the Manufacturing Agreement. (Letter dated June 4, 2018 from T. Tiberi to T. Jones).  Such breaches included, but were not necessarily limited to, breaches of Manufacturing Agreement § 9.5 (failure to "manufacture the Products in accordance with DenMat's specifications, drawings, and technical requirements, using approved vendors and components") and § 11.3 (failure to honor its representation that "it has the right, ability and intention to enter into this Agreement and perform its obligations hereunder . . ."). (Manufacturing Agreement §§ 9.5 & 11.3).

36. Remarkably, CAO continued to insist it could choose its own components and vendors in direct contrast to express, bargained-for contract language prohibiting exactly that.

37. On June 26, 2018, in view of CAO's failure to cure its breaches, DenMat provided written Notice of Termination of the contract, demanded a return of the $200,000.00 it paid to CAO, and asked CAO to acknowledge that DenMat's termination was proper (and walk away from the contracts); DenMat also offered CAO the opportunity to engage in arbitration over the dispute.  (Letter dated June 26, 2018 from T. Tiberi to T. Jones).

38. As of the filing date of the instant action, CAO has refused to acknowledge that DenMat's termination was proper, refused to refund the

$200,000.00, refused to engage in arbitration, and continues to threaten DenMat with a patent infringement lawsuit.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment: Contract Termination was Proper; CAO Must be Enjoined from Filing Infringement Lawsuit)

39. Plaintiff realleges and incorporates by reference each allegation set forth above.

40. An actual controversy has arisen and now exists between DenMat, on one hand, and CAO, on the other, as to whether DenMat's termination of the Manufacturing Agreement was a termination under § 12.1(c) of the Manufacturing Agreement and thus whether CAO is prohibited from suing DenMat for patent infringement.

41. Plaintiff desires a judicial declaration that such termination was proper and triggered § 12.1(c) of the Manufacturing Agreement based on each of two, independent grounds for termination: (1) CAO committed one or more uncured material breaches of the Manufacturing Agreement; and (2) CAO committed anticipatory repudiation of the Manufacturing Agreement.

42. Plaintiff also seeks a preliminary and permanent injunction enjoining CAO from filing a patent infringement lawsuit against DenMat based on its attempt to ignore the royalty-free license granted to DenMat pursuant to the License Agreement.

43. A declaration of rights and associated injunctive relief are necessary and appropriate because no other adequate remedy exists by which DenMat's rights under the Manufacturing and License Agreements may be determined and protected.

44. DenMat therefore respectfully requests that the Court issue an order (a) declaring that DenMat's termination of the Manufacturing Agreement was

pursuant to Manufacturing Agreement § 12.1(c); and (b) enjoining CAO from moving forward with another patent infringement lawsuit against DenMat in direct contravention of the Manufacturing and License Agreements.

## SECOND CLAIM FOR RELIEF

### (Injunction: Unjust Enrichment; Restitution; CAO Must Repay DenMat its $200,000.00 Payment)

45. Plaintiff realleges and incorporates by reference each allegation set forth above.

46. An actual controversy has arisen and now exists between DenMat, on one hand, and CAO, on the other, as to whether CAO negligently (or fraudulently) induced DenMat to enter into the Manufacturing and License Agreements because CAO knew that it would not perform under the Manufacturing Agreement, and therefore DenMat should not have paid it $200,000.00 as Payment No. 1 under the License Agreement.

47. Plaintiff desires a judicial declaration that such payment was based on negligent (or fraudulent) inducement and must be returned to DenMat as unjust enrichment and restitution.

48. A declaration of rights and associated injunctive relief are necessary and appropriate because no other adequate remedy exists by which DenMat's rights under the Manufacturing and License Agreements may be determined and protected.

49. DenMat therefore respectfully requests that the Court issue an order requiring CAO to refund it the $200,000.00 payment that DenMat should not have owed CAO in view of CAO negligent (or fraudulent) inducement of DenMat to enter the Manufacturing and License Agreements.

## PRAYER FOR RELIEF

Wherefore, Plaintiff hereby requests that this Court:

A.   Declare that DenMat's termination of the Manufacturing Agreement was proper pursuant to Manufacturing Agreement § 12.1(c);

B.   Enter a temporary and permanent injunction enjoining Defendant from filing a patent infringement lawsuit against DenMat as prohibited by the Manufacturing and License Agreements;

C.   Enter an order requiring CAO to return DenMat's payment to CAO in the amount of $200.000.00;

D.   Enter an award of attorneys' fees and costs pursuant to Manufacturing Agreement § 13.2; and

E.   Award such other and further relief as this Court deems just and proper.

DATED: July 23, 2018

Respectfully submitted,

TIBERI LAW OFFICE

By: /s/ Todd J. Tiberi_____
Todd J. Tiberi (CA Bar No. 243967)
  *ttiberi@tiberilaw.com*
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Phone: 917-573-2802
Fax: 805-347-7933

Attorney for Plaintiff