## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|---|---|---|---|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Todd Tiberi | J. Christopher Jaczko |
| Nona Yegazarian | Craig Hoggan |
| Ethan Brown | Nathan Kopp |

**Proceedings:**     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. [ 34 ], filed June 20, 2019)

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. [ 41 ], filed June 24, 2019)

## I. INTRODUCTION

On July 23, 2018, plaintiff Den-Mat Holdings, LLC ("DenMat") filed this action for breach of contract against defendant CAO Group, Inc. ("CAO Group"). Dkt. 1 ("Compl."). DenMat asserts two claims for relief: (1) breach of contract; and (2) unjust enrichment. Id.

CAO Group filed its operative amended answer on August 28, 2018, asserting seven counterclaims pursuant to California law: (1) Breach of the License Agreement; (2) Breach of Implied Covenant of Good Faith and Fair Dealing – License Agreement; (3) Breach of the Manufacturing Agreement; (4) Breach of Implied Covenant of Good Faith and Fair Dealing – Manufacturing Agreement; (5) Rescission of the Manufacturing Agreement; (6) Unjust Enrichment; and (7) Permanent Injunction. Dkt. 14 ("Countercl.").

On June 20, 2019, DenMat filed a motion for partial summary judgment as to its first claim for relief and as to each of CAO Group's counterclaims, dkt. 34 ("D. Mot."), and a statement of undisputed material facts and conclusions of law, dkt. 36 ("DSUF"). CAO Group filed an opposition on July 8, 2019, dkt. 55 ("C. Opp."), and a statement of

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

genuine disputed facts, dkt. 55-1 ("CGDF"). DenMat filed a reply on July 15, 2019. Dkt. 62 ("D. Reply").

On June 24, 2019, CAO Group filed a motion for partial summary judgment as to both of DenMat's claims for relief, dkt. 41 ("C. Mot."), and a statement of undisputed material facts and conclusions of law, dkt. 42 ("CSUF"). DenMat filed an opposition on July 8, 2019, dkt. 46 ("D. Opp."), and a statement of genuine disputed facts, dkt. 46-1 ("DGDF"). CAO Group filed a reply on July 15, 2019, dkt. 61 ("C. Reply"), and a reply statement to DenMat's statement of genuine disputed facts ("CRSDF"), dkt. 61-3.

The Court held a hearing on the parties' cross motions for summary judgment on August 19, 2019. Having carefully considered the parties' arguments, the Court concludes as follows.

## II. BACKGROUND

This case arises out of a dispute between DenMat and CAO Group regarding licensing and manufacturing contracts related to soft-tissue diode lasers used by dentists and other dental professionals. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A. The Parties

DenMat is a limited liability company with its principal place of business in California. DSUF No. 8. It manufactures and sells dental equipment, including oral hygiene products, oral cancer screening devices, and dental lasers, to dentists and hygienists located in the United States, the European Union, and elsewhere. Id. Nos. 9–10. David Casper ("Casper") serves as the company's Chief Executive Officer. Dkt. 37, Declaration of David Casper ("Casper Decl. I.") ¶ 1.

CAO Group is a Utah corporation that has manufactured and sold products, including dental lasers, for more than 15 years. DSUF No. 1; Dkt 41-3 at 2. It has manufactured lasers for other large dental companies and produces 3,000 lasers per year. DSUF Nos. 1–2. Densen Cao, Ph.D. ("Dr. Cao") serves as CAO Group's President. Id. No. 4. This case arises out of previous litigation in which CAO Group alleged that DenMat's products infringe several of CAO Group's patents.

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|---|---|---|---|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

**B.     CAO Group's Previous Patent Infringement Suit Against DenMat**

In 2015, CAO Group brought suit against DenMat alleging that DenMat's SOL® and NV®Pro3 dental lasers and laser tips infringed several of CAO Group's patents. CAO Group v. Den-Mat Holdings, 2:15-cv-07731-SJO-FFM (C.D. Cal.) ("the patent infringement action"), Dkt. 2. The United States District Court for the District of Utah transferred the case to the Central District of California on September 29, 2015. Id., Dkt. 35. The case was thereafter stayed for two years pending the United States Patent and Trademark Office's ("USPTO") reexamination of one of the patents at issue. CSUF No. 1. After the USPTO completed its reexamination and verified CAO Group's patent, the district court lifted its stay in July 2017. DSUF No. 16.

**C.     The Parties Resolve the Infringement Suit and Execute Two Agreements**

CAO Group and DenMat thereafter began discussions to resolve the patent infringement action. DSUF No. 17. On November 2, 2017, the parties agreed to dismiss the patent infringement action, and the Court dismissed that action on November 3, 2017. Patent Infringement Action, Dkt. 105, 106. In settlement of the patent infringement action, the parties executed two agreements: (1) the Nonexclusive Patent License ("License Agreement"); and (2) the Manufacturing and Services Agreement ("Manufacturing Agreement"). DSUF No. 25.

The License Agreement and the Manufacturing Agreement give rise to the dispute in this case. DenMat alleges that CAO Group breached the Manufacturing Agreement by: (1) failing to fulfill DenMat's initial purchase order; (2) failing to supply two or more purchase orders; (3) refusing to manufacture products that comport with DenMat's design specifications; and (4) representing to DenMat that it had the right, ability, and intent to perform. Dkt 38-10 at 12. DenMat further contends that CAO Group anticipatorily repudiated the Manufacturing Agreement. Id. at 9.

CAO Group, in turn, asserts that DenMat breached both the License and Manufacturing Agreements. See Countercl. ¶¶ 40, 63, 65. It alleges that DenMat breached the License Agreement by failing to make required royalty payments and provide quarterly reports. Id. ¶ 74. CAO Group further alleges that DenMat breached the Manufacturing Agreement by: (1) refusing to allow it to purchase components from DenMat or other vendors at the components' fair market value; (2) failing to timely provide it with DenMat's manufacturing specifications; (3) declining to pay for tooling; and (4) failing to issue an initial purchase order. Id. ¶ 84.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

DenMat and CAO Group each seek partial summary judgment. <u>See</u> D. Mot. at 1; C. Mot. at 2. DenMat seeks partial summary judgment on its own claim that CAO Group anticipatorily repudiated the Manufacturing Agreement and summary judgment on each of CAO Group's counterclaims. D. Mot. at 1. CAO Group seeks summary judgment on each of DenMat's claims. C. Mot. at 12.

### i.     The License Agreement

The License Agreement provides DenMat "a nonexclusive, license . . . to import, export, make, manufacture, have made, make for others, use, offer for sale, sell, or otherwise distribute" products covered by CAO Group's patents. Dkt. 41-3, License Agreement ("L. Agmt.") § (2.1). In return for DenMat's payment of a "License Issue Fee" and ongoing royalty fees, CAO Group agreed to release its patent infringement claims against DenMat. <u>Id.</u> § (3.1).

Specific provisions of the License Agreement which form the bases for the parties' respective claims and contentions are set forth more fully below.

### a.     Sections 4.1, 4.2, and 4.3 Require DenMat to Pay a "License Issue Fee" and Make Royalty Payments

Section 4.1 requires DenMat to pay CAO Group a License Issue Fee totaling $800,000.00, with an initial $200,000.00 payment due "[w]ithin five (5) business days after the Effective Date of this Agreement[.]" L. Agmt. § (4.1). DenMat must make a second installment payment of $120,000.00 following its "acceptance of the first delivery of the Initial Purchase Order under the [Manufacturing] Agreement[,]" and thereafter make subsequent $120,000.00 payments every 30 days. <u>Id.</u>

Section 4.2 of the License Agreement provides that DenMat must also pay to CAO Group a 10% royalty payment for products "used, sold, or otherwise disposed of pursuant to the license granted[.]" <u>Id.</u> § (4.2). The royalty obligations began on January 1, 2018, and were set to continue until CAO Group's patents expired. <u>Id.</u> Any individual royalty amounts paid pursuant to the License Agreement "shall be deemed earned when paid and shall be completely non-refundable."[1] <u>Id.</u>

---

[1]     Another provision titled "Payments Non-Refundable," Section 5.5, reiterates that "the parties deem all payments made hereunder to be earned when paid and to be completely non-refundable." <u>Id.</u> § (5.5).

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|--------------------------|------|------------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

Section 4.3 of the License Agreement exempts certain products from its royalty provisions. Id. § (4.3). These include products that DenMat purchases from CAO Group that DenMat later resells; products that DenMat sells before it receives its first delivery from CAO Group under the Manufacturing Agreement; products that DenMat makes for itself or obtains from a third party due to CAO Group's uncured material breach of the Manufacturing Agreement; and all products that DenMat sells after achieving "the Purchase Threshold" defined in the Manufacturing Agreement. L. Agmt. § (4.3).

**b.      Sections 5.2, 5.3, and 5.4 Require Quarterly Royalty Payments, Written Reports, and Interest on Late Payments**

The License Agreement also requires DenMat to make its royalty payments on a quarterly basis, within thirty days of the end of each calendar quarter. L. Agmt. § (5.2). At CAO Group's request, DenMat must provide a written statement of all royalty amounts due, including the number of units of each model sold, net sales prices for each product sold, and the royalty fee payable. Id. § (5.3). Late payments are subject to ten percent interest until the amount is paid in full. Id. § (5.4).

**ii.      The Manufacturing Agreement**

The parties also entered into a Manufacturing Agreement providing that CAO Group would manufacture, and DenMat would purchase, products that DenMat had previously sold under the SOL® and NV®Pro3 trade names. Dkt. 41-4 at 2, Manufacturing Agreement ("M. Agmt.") § (1.1). DenMat would then market and resell these finished products. Id.

Specific provisions of the Manufacturing Agreement which form the bases for the parties' respective claims and contentions are set forth more fully below.

**a.      Section 3.1 Requires DenMat to Provide Design Files to CAO Group and Pay for Necessary Tooling**

To manufacture the dental lasers and laser tips that DenMat itself previously produced under the SOL® and NV®Pro3 trade names, CAO Group required access to DenMat's design files. Accordingly, Section 3.1 of the Manufacturing Agreement requires DenMat to provide to CAO Group "the molds for injection molded housing components, dimensioned engineering drawings, electronic design files, software programs, and any other design files required for manufacturing[.]" M. Agmt. § (3.1). Should the manufacturing process require any additional tooling, DenMat "agrees to pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

such tooling fee." Id. Tooling refers to the "construction of separate components and machines needed to make the lasers," such as molds for plastic housings, fixtures, gauges, and dies. Dkt. 41-1 at 5.

### b.     Sections 4.1, 4.2, and 4.3 Establish Development and Manufacturing Obligations

Section 4.1 of the Manufacturing Agreement requires CAO Group to "use commercially reasonable efforts to create a timeline for setting up the manufacture and delivery" of dental lasers and laser tips to DenMat. M. Agmt. § (4.1). CAO Group must use "commercially reasonably efforts . . . to develop and deliver" the products within three months of executing the Agreement. Id. Manufacturing and delivery "may take more or less time depending on many factors." Id.

Section 4.2 grants DenMat an option to require CAO Group to purchase DenMat's existing component inventory. Id. § (4.2). Should DenMat exercise this option, CAO Group must pay DenMat the lesser of: (1) DenMat's material cost, plus four percent; or (2) the then-current fair market price of equivalent component inventory. Id. DenMat's exercise of the option would bar CAO Group from purchasing any "substantially equivalent" components until DenMat's existing component inventory is depleted. Id.

Section 4.3 requires CAO Group to "use best efforts to maintain the necessary manufacturing capability to fill orders for Products received from" DenMat. Id. § (4.3). CAO Group's failure to "timely supply all or substantially all" of two or more purchase orders, and its inability to cure such failure within ten business days, constitutes a "material breach" of the Manufacturing Agreement, unless that failure is attributable to DenMat. Id.

### c.     Section 5.2 Specifies Particular Purchase Prices and Quantities

The Manufacturing Agreement specifies the prices at which CAO Group is required to sell finished dental laser and laser tips to DenMat, as well as the minimum number of units DenMat must purchase annually. DenMat must purchase a minimum of: two hundred and forty SOL laser kits per year, at a price of $1,199.00 per unit; two hundred and forty NV laser kits per year, at a price of $1,1029.00 per unit; and one hundred and twenty-five thousand laser tips per year, at a price of $1.95 per unit. M. Agmt. § (5.2). This provision requires DenMat to pay CAO Group the same prices for dental lasers and laser tips regardless of which components or vendors CAO Group

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

ultimately uses to manufacture these products. DSUF No. 102. DenMat's purchase of $4.5 million in products from CAO Group triggers an eight percent decrease in the prices that DenMat pays to CAO Group for SOL laser kits, NV laser kits, and laser tips. M. Agmt. §§ (5.2, 7.3).

> **d.** **Sections 7.1, 7.2, and 7.3 Require DenMat to Issue an Initial Purchase Order and Make Subsequent Regular Purchases Towards a "Paid-Up and Royalty-Free" License**

Following the parties' completion of "manufacturing logistics," Section 7.1 of the Manufacturing Agreement requires DenMat to issue an "Initial Purchase Order" consisting of one hundred and fifty NV laser kits, one hundred and fifty SOL laser kits, and two hundred thousand laser tips. M. Agmt. § (7.1). DenMat retains authority to determine the "delivery schedule and quantities of each type of laser tip" prior to issuing the Initial Purchase Order. Id. Section 7.1 requires CAO Group to provide the Initial Purchase Order "at no cost" to DenMat. Id.

Section 7.2 establishes minimum purchase quantities that DenMat must purchase each month after delivery of the Initial Purchase Order. Id. § (7.2). These monthly minimums commence thirty days after delivery of the Initial Purchase Order and require DenMat to purchase, at minimum, twenty SOL laser kits and twenty NV laser kits each calendar month. Id.

Section 7.3 grants DenMat a "fully paid-up and royalty-free license" to CAO Group's patent rights pursuant to thirteen of CAO Group's patents. M. Agmt. § (7.3). To earn this license, DenMat must purchase $4.5 million worth of product from CAO Group. Id.

> **e.** **Section 9.5 Requires CAO Group to Adhere to DenMat's Specifications and Obtain Written Approval for Any Changes**

Section 9.5 requires CAO Group to manufacture dental lasers and laser tips "in accordance with [DenMat]'s specifications, drawings, and technical requirements, using approved vendors and components[.]" M. Agmt. § (9.5). Accordingly, CAO Group "shall not change any bills of materials, vendors, or work instructions without [DenMat's] prior written approval[.]" Id.; CSUF No. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|--------------------------|------|------------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

### f.    Sections 11.2 and 11.3 Require Specific Representations

In executing the Manufacturing Agreement, DenMat represents that: "(a) it has the right, ability and intention to enter into this Agreement and perform its obligations hereunder; and (b) it has entered into no other agreement in conflict with this Agreement." M. Agmt. § (11.2). The Agreement contains another provision requiring that CAO Group represent the same. Id. § (11.3).

### g.    Sections 12.1 and 12.2 Govern the Agreement's Termination

Section 12 specifies the Manufacturing Agreement's effective duration, and it provides several means by which either party may terminate the Agreement. M. Agmt. §§ (12.1, 12.2). By default, the Licensing Agreement remains in effect until DenMat purchases more than $4.5 million in product from CAO Group, at which time DenMat may terminate the Manufacturing Agreement in its sole discretion. Id. § (12.1). Should DenMat choose not to terminate the Manufacturing Agreement, the Manufacturing Agreement may be renewable for additional three-year periods subject to both parties' good faith agreement. Id.

The Manufacturing Agreement may be terminated: by the parties' mutual written consent; at DenMat's option following written notice to CAO Group after DenMat exceeds $4.5 million in purchases; or at either party's option, following written notice, should the other commit a material breach and fail to cure the breach within thirty days of receiving written notice. Id. § (12.1(a)(b)(c)(d)).

The means used to terminate the Manufacturing Agreement dictate the continuing duties and obligations of the respective parties. CAO Group is excused from selling products to DenMat if the Manufacturing Agreement is terminated by the parties' mutual written consent, at DenMat's option following more than $4.5 million in product sales, or at CAO Group's option following DenMat's uncured material breach. Id. § (12.2(a)). If DenMat terminates the Manufacturing Agreement because of CAO Group's uncured material breach, then CAO Group may continue to provide products to DenMat at DenMat's discretion, and DenMat shall continue to enjoy a patent license. Id. § (12.2(b)).

**CIVIL MINUTES – GENERAL**　　　**'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|---|---|---|---|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

### D.　The Parties' Performance Under the Agreements

#### i.　DenMat Makes an Initial $200,000 Payment Under the Licensing Agreement, and the Parties Initially Cooperate to Transition Manufacturing Responsibility to CAO Group

Within five days of executing the License Agreement on November 2, 2017, DenMat made the required initial $200,000.00 payment to CAO Group. DSUF No. 25. The parties thereafter commenced preparations so that CAO Group could begin manufacturing the dental lasers and laser tips specified by the Manufacturing Agreement. Id. No. 41.

DenMat began transferring the instructions to make its dental lasers and laser tips to CAO Group in November 2017. DSUF No. 38. To do so, it created a File Transfer Protocol site through which CAO Group would have direct access to DenMat's engineering drawings, component specifications, work instructions, vendor lists, and other information. Id. No. 40. On November 9, 2017, DenMat indicated to CAO Group, in writing, that it could source laser components from alternative vendors so long as it "validated" the alternative vendors and received DenMat's approval. Id. No. 149.

#### ii.　DenMat Provides Information Regarding Its Components' Costs to CAO Group

In February 2018, DenMat provided CAO Group with the pricing it paid for its laser components.[2] DSUF No. 49. CAO Group notified DenMat that, from its own vendors, CAO Group could obtain lower pricing on these components, though the difference in "the total dollar amount is not huge." Id. No. 51. DenMat never exercised its option to require CAO Group to purchase its component inventory, and it never expressed to CAO Group whether it intended to do so.[3] CSUF Nos. 36–37. CAO Group

---

[2]　CAO Group disputes this fact to the extent that it represents DenMat sent CAO Group this information at CAO Group's request. CGDF No. 49. DenMat also asserts that "the parties were in constant contact regading [sic] DenMat's inventory, which CAO could have purchased at any time." DGDF No. 34.

[3]　DenMat does not dispute that it never exercised its option but asserts that "CAO did not ask DenMat whether it intended to exercise the option in Section 4.2 of the Manufacturing Agreement." DGDF No. 37.

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

contends that "DenMat's refusal to provide this basic information effectively prevented CAO from arranging to purchase components from other sources and otherwise plan its manufacturing process." C. Mot. at 12–13. That is because, according to CAO Group, it "was never able to determine which, and how many, components CAO would be required to purchase from DenMat's existing inventory and which components CAO would be permitted to purchase from other sources." Id. at 13.

### iii. CAO Delivers Several Products to DenMat, and DenMat Subsequently Provides Its Manufacturing Specifications

In February 2018, CAO Group manufactured and delivered several products to DenMat for testing during the pilot builds and validation process. CSUF No. 39; DSUF No. 154; see also Dkt. 41-18, Deposition of Nicholas Gonzales ("Gonzales Depo.") at 74:2–16. DenMat provided the components for these lasers to CAO Group "free of charge." DSUF No. 155. This batch of products did not pass validation testing,[4] id. No. 44, and products that fail validation testing cannot be sold to customers, CSUF No. 22; DSUF No. 47. As a result, DenMat disassembled these validation batches, using them for parts or scrapping them. DSUF No. 48.

### iv. DenMat's February 27, 2018 Purchase of Dental Lasers and Laser Tips

The Manufacturing Agreement requires DenMat to purchase from CAO Group, as part of an Initial Purchase Order, a total of one hundred and fifty NV laser kits, one hundred SOL laser kits, and two hundred thousand laser tips. M. Agmt. § (7.1). The Agreement mandates that DenMat issue this Initial Purchase Order "after completion of manufacturing logistics[.]" Id.

On February 27, 2018, DenMat submitted paperwork to purchase the requisite total quantities of product set forth as part of the Initial Purchase Order requirements in the Manufacturing Agreement. DSUF No. 153. CAO Group contends that the paperwork DenMat submitted consists of "six purchase orders," CSUF No. 17, while DenMat asserts

---

[4] The parties dispute whether CAO Group delivered any dental lasers or laser tips to DenMat that passed validation testing. See CGDF Nos. 44, 138. DenMat asserts that "CAO was unable to pass validation testing for either SOL or NVPro3 (and did not attempt validation for laser tips)," DSUF No. 44, while CAO Group contends that "CAO was able to pass validation testing for the SOL and the NVPro 3[,]" CGDF No. 44.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

it submitted one purchase order "comprised of different quantities over multiple delivery dates, which is common in a manufacturing and supply agreement[.]" DGDF No. 17.

The parties dispute whether the Initial Purchase Order was fulfilled. CGDF No. 159. DenMat asserts that CAO Group "never delivered a single sellable laser to DenMat." DSUF No. 138. CAO Group insists that DenMat did not provide the product specifications that CAO Group needed to begin manufacturing product until March or April of 2018, CSUF No. 32, and that "[t]his failure by DenMat . . . prevented CAO from building and delivering products in response to any purchase orders," C. Mot. at 13. In any event, CAO Group maintains that it "delivered multiple finished lasers to DenMat between February 2018 and April 2018." CGDF No. 138.

### v.   DenMat Declines to Reimburse CAO Group for Tooling

On May 22, 2018, CAO Group invoiced DenMat for tooling it represented was necessary to manufacture the laser tips. CSUF No. 66. DenMat declined to pay for this tooling, id., and as a result, CAO Group did not order or pay for this tooling, dkt. 46-1, DenMat's Statement of Additional Uncontroverted Facts ("DAUF") No. 68. CAO Group contends that DenMat's decision not to pay for tooling constitutes a breach of the Manufacturing Agreement. C. Mot. at 5–6.

### vi.   CAO Group's May 16, 2018 Proposal and Dr. Cao's Subsequent "D.O.A." Statement

CAO Group made a formal proposal to DenMat on May 16, 2018, to transition away from the vendors and components that DenMat had been using. CSUF No. 47. The proposal indicated that, given the sales prices the Manufacturing Agreement specified, "the act of assuming manufacturing is simply not economically viable under the terms of continued purchase of parts and materials exactly as DenMat is doing now." Dkt. 41-8 at 3. Therefore, [f]or this activity to be profitable, CAO must make some adjustments to the sourcing of components for these products." Id. The proposal acknowledged that substitutions would require DenMat's approval. CSUF No. 50.

DenMat subsequently declined CAO Group's proposal. Dkt. 38-12 at 7. Dr. Cao, CAO Group's president, subsequently contacted David Casper, DenMat's CEO, to determine why. CSUF No. 52. Casper represents that during this conversation, Dr. Cao stated that the Manufacturing Agreement was "D.O.A." Dkt. 38-12 at 7. The parties dispute the significance of this statement.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

CAO Group represents that "if DenMat had not intended to approve vendors and components other than those DenMat had been using," then it would not have entered the Manufacturing Agreement because manufacturing products using DenMat's existing vendors and components would cause CAO Group to suffer a loss on each laser. CGDF No. 166. Therefore, CAO Group maintains that in making the "D.O.A." statement, Dr. Cao "meant that the contract would have been a losing venture from CAO from the beginning, because DenMat's known cost to make each laser using its existing vendors and components was higher than the final sale price that CAO was permitted to charge DenMat per laser[.]" CSUF No. 56. In contrast, DenMat asserts the statement reflects a "refus[al] to perform in accordance with [the Manufacturing Agreement's] terms . . . to make more money out of the deal[.]" DGDF No. 56.

### vii. The Parties Exchange Correspondence Regarding Anticipatory Repudiation of the Manufacturing Agreement

On May 29, 2018, DenMat's counsel sent a letter to CAO Group alleging that it had repudiated the Manufacturing Agreement. CSUF No. 61. The letter specifically references CAO Group's May 16, 2018 proposal, including the statement that "the act of assuming manufacturing is simply not economically viable," as well as Dr. Cao's "D.O.A." statement on May 24, 2018. Dkt. 41-10 at 2. It requests that "CAO immediately revoke[] its repudiation and agree[] to honor the terms of the Agreement[.]" Id. at 3.

CAO Group responded to DenMat's May 29, 2018 letter in its own letter dated June 1, 2018. CSUF No. 62. In it, counsel for CAO Group indicated that "CAO ha[d] not repudiated the Manufacturing Agreement and d[id] not wish to do so." Dkt. 41-11 at 2. CAO Group reiterated that, "[f]or the sake of absolute clarity, CAO hereby revokes any statements of repudiation that may have been made on its behalf, even though it is not aware of any such statements."[5] Id.

### viii. DenMat's June 4, 2018 "Written Notice of Breach of Contract" and June 26, 2018 "Notice of Termination" Letters

On June 4, 2018, counsel for DenMat sent CAO Group a letter entitled "Written Notice of Breach of Contract." DSUF No. 167. In it, DenMat asserted that CAO Group

---

[5]     DenMat disputes whether, as a matter of law or fact, CAO Group's June 1, 2018 response constitutes a valid revocation of any repudiation. See DGDF No. 62; D. Reply at 16–17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

had breached "one or more material terms" of the Manufacturing Agreement including Sections 4.3, 7.1, 9.5, and 11.3. Dkt. 38-10 at 16. DenMat urged that these purported breaches "trigger the termination provisions in § 12.2(b) of the Agreement." Id. It demanded return of the $200,000.00 initial payment it made to CAO Group under the License Agreement and written acknowledgment that the Manufacturing Agreement had been terminated. Id. at 17. DenMat reiterated these demands in a "Notice of Termination" letter dated June 26, 2018. Dkt 38-10 at 12.

## III.  LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|-------------------------|------|-----------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

## IV.   DISCUSSION

CAO Group moves for summary judgment on both of DenMat's claims for relief. C. Mot. at 2.  DenMat moves for partial summary judgment as to its first claim on the issue of anticipatory repudiation, as well as for summary judgment on CAO Group's counterclaims.  D. Mot. at 1.

### A.   The Parties' Breach of Contract Claims

The parties assert breach of contract claims against each other.  DenMat's first claim alleges that CAO Group repudiated and materially breached the Manufacturing Agreement by failing to timely supply multiple purchaser orders, including the Initial Purchase Order, refusing to manufacture products using DenMat's approved vendors and components, and misrepresenting its intent to perform its contractual duties.  Compl. ¶ 41.  CAO Group's first and third claims allege that DenMat breached the License and Manufacturing Agreements by failing to make required royalty payments and reports, submitting an invalid initial purchase order, refusing to pay for tooling, and providing manufacturing specifications on an untimely basis.  Countercl. ¶¶ 74, 84.  To prevail on a claim for breach of contract, a party must show "(1) the existence of the contract[6], (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted).

### i.   Whether Triable Issues Exist Regarding DenMat's Performance Under the Manufacturing and License Agreements

The materiality of an obligation or a breach of that obligation "is generally a question of fact."  Urica, Inc. v. Pharmaplast S.A.E., No. CV1102476MMMRZX, 2013 WL 12123230, at *7 (citing Associated Lathing etc. Co. v. Louis C. Dunn, Inc., 135 Cal.App.2d 40, 49 (1955)).  Whether triable issues exist regarding DenMat's performance under the Manufacturing and License Agreements bears on the Court's determination of both parties' motions.

---

[6]     The parties do not dispute that the License and Manufacturing Agreements were valid and effective when executed.  DSUF No. 87; C. Mot. at 24; D. Mot. at 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

### a.    DenMat's Performance Under the Manufacturing Agreement

CAO Group seeks summary judgment on DenMat's breach of contract claim on the grounds that DenMat itself "has failed to perform its duties under the Manufacturing Agreement, without any valid legal excuse." C. Mot. at 4. CAO Group alleges that DenMat breached Section 7.1, by failing to submit a valid Initial Purchase Order, as well as Section 3.1, by refusing to pay for necessary tooling. Id. at 4–6. Triable questions of fact exist that preclude the Court from granting summary judgment to CAO Group.

For example, there is disputed evidence regarding the purchase order paperwork that DenMat submitted to CAO Group on February 27, 2018, and whether CAO Group obtained manufacturing specifications sufficient to fulfill these orders. Each page of what DenMat claims to be its single Initial Purchase Order contains a "Purchase Order No." field, and each of the six pages contains a different number in this field. Dkt. Nos. 38-9 at 33–36, 38-10 at 1–3. Moreover, DenMat's Chief Executive Officer, David Casper testified that "the initial purchase order is to be issued after the manufactured initial logistics were completed, . . .and we had not gotten there yet." Dkt. 41-16, Deposition of David Casper ("Casper Depo.") at 153:24–154:3. On the other hand, the parties do not dispute that the quantities of products described over the six separate pages that DenMat submitted on February 27, 2018, together add up to the total amounts required by Section 7.1. DSUF No. 153. DenMat offers deposition testimony that the parties treated the February 27, 2018 purchases "as one" and that "as of February 27th, CAO Group clearly felt they had what they needed to build both lasers," since DenMat later delivered lasers for validation testing. Casper Depo. at 161:16–20, 169:4–6. At this juncture, the Court cannot determine whether DenMat complied with Section 7.1's Initial Purchase Order requirements or whether any failure to do so was material.

Nor can the Court determine, at this time, whether DenMat's May 22, 2018 refusal to pay CAO Group for tooling constitutes a material breach of the Manufacturing Agreement. CAO Group offers, as support, a series of emails wherein CAO Group submitted an invoice for $42,300 in tooling on May 22, 2018, and CAO Group declined this request in writing on June 6, 2018. Dkt. No. 41-12 at 2. In response, DenMat offers the undisputed fact that CAO Group never ordered or paid for this tooling.[7] CRSDF No.

---

[7]    DenMat also asserts that CAO Group never "provide[d] the specifications for the proposed tooling to DenMat" and "knew that DenMat could not have approved the

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

68.  The Court observes that CAO Group's request for payment for tooling came on May 22, 2018, nearly three months *after* DenMat submitted purchase orders for lasers and laser tips on February 27, 2018.  Accordingly, genuine disputes of fact preclude the Court from determining, at this time, that any failure by DenMat to pay CAO Group for tooling in May 2018 excused any failure by CAO Group to fulfill a purchase order submitted some three months earlier.  See Urica, 2013 WL 12123230, at *6 ("a material breach of contract excuses *further* performance by the injured party and entitles that party to terminate the contract.") (emphasis added).

Questions of fact exist regarding DenMat's performance under the Manufacturing Agreement.  The disputed record therefore precludes the Court from granting summary judgment to CAO Group on the grounds that DenMat's lack of performance excused CAO Group's own further performance under the Manufacturing Agreement.

### b.  DenMat's Performance Under the License Agreement

DenMat moves for summary judgment on CAO Group's claim that DenMat breached the License Agreement, contending that subsequent license payments never became due because the condition precedent, delivery under the Initial Purchase Order, never occurred.  D. Mot. at 23.  DenMat asserts that "CAO [Group] never delivered a single sellable laser to DenMat[.]"[8]  Id.  CAO Group in turn urges that the second and subsequent $120,000 License Issue Fee payments became due because "DenMat accepted multiple laser deliveries from CAO [Group]."  C. Opp. at 21.

The Court has already found that triable issues exist regarding whether DenMat's February 27, 2018 purchases complied with the Manufacturing Agreement.  Genuine disputes also exist regarding CAO Group's fulfillment of those purchases.  For example, former CAO Group employee Nathan Hult testified that "while I was there, we never did deliver the first . . . lasers[.]"  Dkt. 38-1, Deposition of Nathan Hult ("Hult Depo.") at 79:25–80:3.  Casper likewise asserts that "DenMat never received a delivery from CAO [Group] of a single sellable SOL, NVPro3, laser tip or any other product that DenMat could sell or did sell to its customers," Casper Decl. I. ¶ 15.  Conversely, DenMat

---

invoice without CAO [Group] first providing the specifications for the proposed tooling."  Dkt. No. 46-2, Declaration of David Casper ("Casper Decl. II") ¶ 5.

[8]      DenMat's motion does not address CAO Group's claims that DenMat also breached Sections 4.2, 5.2, and 5.3 of the License Agreement by failing to make ongoing royalty payments and written reports.

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

acknowledges that it received units that passed validation, and that units which pass validation "could then be put into finished goods in an unquarantined fashion and sold." Casper Depo. at 198:22–25; Gonzales Depo. at 187:11–13.

Conflicting evidence in record prevents the Court from determining, at this time, whether subsequent payments under the License Agreement became due or whether DenMat materially breached the License Agreement by failing to make them. Summary judgment for DenMat on this ground is therefore improper.

### ii.  Whether Triable Issues Exist Regarding CAO Group's Performance Under the Manufacturing Agreement

#### a.  DenMat's Actual Breach Claims

DenMat alleges that CAO Group breached Sections 4.3, 7.1, 9.5, and 11.3 of the Manufacturing Agreement by failing to timely supply multiple purchase orders, including the Initial Purchase Order, refusing to manufacture products using DenMat's approved vendors and components, and misrepresenting its intent to perform its contractual duties. Dkt. 38-10 at 16. DenMat seeks summary judgment on CAO Group's breach of contract claim, contending that CAO Group cannot maintain a claim for breach in light of its own material breaches. D. Mot. at 11. CAO Group in turn moves for summary judgment on DenMat's claim that CAO Group breached these provisions of the Manufacturing Agreement.[9] D. Mot. at 3.

Numerous genuine issues of fact preclude the Court from granting summary judgment to either party regarding CAO Group's performance under the Manufacturing Agreement. For example, DenMat alleges that CAO Group breached Section 9.5 of the Manufacturing Agreement by failing to "manufacture the Products in accordance with DenMat's specifications . . . using approved vendors and components[.]" Compl. ¶ 35. In response, CAO Group contends that any failure to manufacture products in accord with DenMat's requirements was because "DenMat did not timely provide CAO with the specifications and information that CAO needed to make the products[.]" C. Mot. at 14.

---

[9] DenMat's June 4, 2018 letter to CAO Group alleges that CAO Group breached Sections 4.3, 7.1, 9.5, and 11.3 of the Manufacturing Agreement, while its operative complaint only explicitly refers to Sections 9.5 and 11.3. Dkt. 38-10 at 16; Compl. ¶ 35. CAO Group's motion addresses each of these four provisions. C. Mot. at 6.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|-------------------------|------|-----------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

The record contains conflicting evidence on this point. For example, DenMat employees testified that DenMat did not provide CAO Group all the materials that CAO Group needed for manufacturing until March or April of 2018, that CAO Group continued to request information from DenMat through May 24, 2018, and that "certain errors caused by Den-Mat may have led to delays." Gonzales Depo. at 208:17–21; Casper Depo. at 170:1–171:6. CAO Group's delivery of validation lasers to DenMat during this time, however, could allow a finder of fact to determine that "as of February 27th, CAO Group clearly felt they had what they needed to build both lasers[.]" Casper Depo. at 169:4–6.

The parties also dispute whether CAO Group's desire for additional profits caused these delays. DenMat contends that in a June 22, 2018 conversation between Dr. Cao and David Casper, Dr. Cao stated that although CAO Group "would earn a profit if it performed under the Manufacturing Agreement using DenMat's components and vendors (12% profit margin on SOL and 5% profit margin on NVPRO3) . . . this was not as much profit as CAO wanted to make."[10] Casper Decl. II ¶ 11. A finder of fact could reasonably conclude that CAO Group's failure to provide dental lasers and laser tips to DenMat, using DenMat's approved vendors and components, was the result of either DenMat's own delays or CAO Group's desire for additional profits.

For these reasons, the Court cannot determine, at this stage of the litigation, whether CAO Group materially breached various provisions of the Manufacturing Agreement or was excused in doing so. Genuine disputes of fact therefore preclude the Court from granting summary judgment to either party.

### b.    DenMat's Anticipatory Repudiation Claims

DenMat seeks partial summary judgment as to its own breach of contract claim, contending that CAO Group made a series of statements that constitute express

---

[10]    CAO Group disputes DenMat's characterization of this conversation as "Mr. Casper's interpretation of something Dr. Cao allegedly said[.]" CRSDF No. 53. CAO Group also disputes that it could turn any profit using DenMat's approved components and vendors and that "DenMat knew at the time the parties entered the Manufacturing Agreement that the only way CAO could make money . . . was to pay lower costs by using alternative vendors and components, rather than using DenMat's existing vendors and components." CGDF No. 21. These disputes therefore present additional triable issues that render summary judgment inappropriate.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|-------------------------|------|-----------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

anticipatory repudiation. D. Mot. at 11. CAO Group seeks summary judgment as to DenMat's claim, contending that, as matters of law, these various statements are insufficiently "clear, positive, [and] unequivocal" to constitute repudiations. C. Mot. at 17.

Anticipatory repudiation occurs where a party "positively repudiates the contract by acts or statements indicating that it will not or cannot substantially perform essential terms thereof." Mission Beverage Co. v. Pabst Brewing Co., LLC, 15 Cal. App. 5th 686, 702 (2017) (citing Guerrieri v. Severini, 51 Cal. 2d 12, 18 (1958)) (internal punctuation omitted). "In each case, it is a question of fact as to whether or not a party has committed an anticipatory breach by repudiating the contract." Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp., 411 F.2d 889, 894 (9th Cir. 1969); accord Purdum v. Wolfe, No. C-13-04816 DMR, 2014 WL 171546, at *5 (N.D. Cal. Jan. 15, 2014). "[R]epudiation is ordinarily a question of fact and intent, and [it] must be determined by the facts in the particular case." Gold Mining & Water Co. v. Swinerton, 23 Cal. 2d 19, 28 (1943).

The parties' contentions regarding Dr. Cao's May 24, 2018, "D.O.A." statement provide but one example of the factual disputes that exist regarding the circumstances and intentions underlying CAO Group's various alleged repudiating statements.[11] DGDF No. 56. Moreover, CAO Group also argues that its June 1, 2018 letter "revoke[d] any statements of repudiation that may have been made on its behalf[.]" Dkt. 41-11 at 2; C. Mot. at 22. But whether that revocation was effective turns on whether "the injured party disregards the repudiation and treats the contract as still in force[.]" Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes, 191 Cal. App. 4th 435, 463 (2010). That too raises additional disputes, including whether DenMat detrimentally relied on CAO Group's alleged repudiating statements before CAO Group may have retracted them. See Ferguson v. City of Cathedral City, 197 Cal. App. 4th 1161, 1170 (2011) (finding that in case of purported retraction of repudiation, "[q]uestions of justifiable reliance constitute questions of fact which cannot be resolved when the facts are disputed.").

---

[11]     DenMat asserts that Dr. Cao's statement meant that as of May 24, 2018, "CAO [Group] would not honor the Manufacturing Agreement." D. Opp. at 11. CAO Group contends that Dr. Cao meant that CAO Group would not have entered the Manufacturing Agreement to begin with had DenMat never intended to allow it to use alternative vendors and components. C. Opp. at 9.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|---|---|---|---|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

### iii.     Whether Triable Issues Exist Regarding DenMat's Damages

CAO Group asserts that, even if triable issues of fact remain regarding the first three elements of DenMat's breach of contract claim, it is entitled to summary judgment because "[t]here is no evidence that DenMat has incurred any damages at all, let alone any as a result of breaches by CAO." C. Mot. at 15. DenMat contends that it has adduced sufficient evidence to raise a triable issue to the damages it suffered as a result of CAO Group's purported breaches. D. Opp. at 15.

"Under California law, a breach of contract claim requires a showing of appreciable and actual damage." Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000). To withstand a motion for summary judgment, DenMat "must provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award." Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc., 773 F.2d 1506, 1509–10 (9th Cir. 1985) (internal citation omitted). But "[w]here the *fact* of damages is certain . . . the *amount* of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation be used, and the result reached can be a reasonable approximation." JMR Constr. Corp. v. Envtl. Assessment & Remediation Mgmt., Inc., 243 Cal. App. 4th 571, 585 (2015) (ellipsis and emphasis in original) (internal citation omitted).

The disputed evidence before the Court prevents the Court from determining, at this stage, that DenMat cannot recover damages. For example, DenMat's CEO, David Casper, testified: that DenMat "had sent a $200,000 check" to CAO Group[12]; that DenMat "had sent tens of thousands of dollars of components to" CAO Group; and that DenMat "had sent a team of people on multiple occasions to Utah[.]" Casper Depo. at 238:23–239:4. It supplants this testimony with Casper's declaration reiterating the nature

---

[12]     CAO Group asserts that DenMat cannot recover this $200,00 payment as damages for CAO Group's purported breach of the Manufacturing Agreement because the payment obligation arose under the separate License Agreement. C. Mot. at 15. Dr. Cao's declaration, however, raises an inference that the parties executed the two agreements together to resolve previous patent infringement litigation. Cao Decl. II ¶¶ 85–89. Dr. Cao asserts that "[i]n exchange for agreeing to accept [license] installment apyments from DenMat over time rather than the full $800,000 up front, CAO [Group] proposed a supplemental arrangement, where CAO [Group] would take over DenMat's manufacturing[.]" Id. ¶ 89. The Court therefore cannot resolve CAO Group's damages contention at this stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

of these losses, in addition to "lost gains in profits expected from the transfer of its laser manufacturing to CAO[.]" Casper Decl. I ¶ 4. That is sufficient to raise a question of fact regarding damages. See Morgan Creek Prods., Inc. v. Capital Cities/ABC, Inc., No. CV-89-5463-RSWL(JRX), 1991 WL 352619, at *16–17 (C.D. Cal. Oct. 28, 1991) (finding that deposition testimony that allegedly infringing television show caused film sequel to suffer lost gains in box office profits expected between original film and sequel precluded summary judgment on issue of damages).

**B.     CAO Group's Implied Covenant of Good Faith and Fair Dealing Claims**

CAO Group asserts counterclaims against DenMat for violating the implied covenant of good faith and fair dealing. Countercl. ¶¶ 79, 89. CAO Group alleges that DenMat acted in bad faith by refusing to make the second and subsequent License Issue Fee payments despite having accepted multiple laser deliveries from CAO Group. C. Opp. at 21. CAO Group also contends that DenMat acted in bad faith by refusing to allow it to use alternative vendors and components, knowingly causing CAO Group to manufacture products at a loss. C. Opp. at 19. DenMat moves for summary judgment as to these claims, contending that it acted in accord with its express contractual rights, and its conduct therefore "cannot be a breach [of the implied covenant], as a matter of law." D. Mot. at 21.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992). The covenant of good faith and fair dealing may not, however, "prohibit a party from doing that which is expressly permitted by an agreement." Id. at 374. But "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 923 (1985) (citing Cal. Lettuce Growers v. Union Sugar Co., 45 Cal. 2d 474, 487 (1955)).

The Court has already determined that numberous triable issues of fact exist. For example, a finder of fact must determine whether CAO Group complied with its initial purchase order requirements under the Manufacturing Agreement, sufficient to trigger DenMat's subsequent payment obligations under the License Agreement. Similarly, a finder of fact must also decide whether CAO Group could have profitably manufactured products using DenMat's approved vendors and components. Accordingly, the Court

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

cannot decide, based on the disputed record, whether DenMat's purported failure to comply with provisions of these agreements was motivated by bad faith. See Las Vegas Land & Dev. Co., Inc. v. Bank of Am., N.A., No. CV152273FMOMANX, 2018 WL 6991161, at *6 (C.D. Cal. Oct. 15, 2018) (denying summary judgment and noting that "[t]he issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact[.]") (citing Hicks v. E.T. Legg & Associates., 89 Cal.App.4th 496, 509 (2001)).

## C.     CAO Group's Rescission Claim

CAO Group seeks rescission of the Manufacturing Agreement based on its mistaken beliefs regarding its ability to source using alternative vendors and components, as well as regarding the bases for the sales prices for dental lasers and laser tips specified in the Agreement. Countercl. ¶¶ 93–97. DenMat moves for summary judgment on CAO Group's claim, contending that, as a matter of law, CAO Group cannot demonstrate the unconscionability required to warrant rescission. D. Mot. at 23–24.

A party to a contract may rescind the contract where "the consent of the party rescinding . . . was given by mistake[.]" Cal. Civ. Code § 1689(b)(1). "Rescission for unilateral mistake is permissible under California law only 'where the other party knows of the mistake or caused the mistake' or 'where the effect of the mistake is such that enforcement of the contract would be unconscionable.'" Hamilton v. Marx, No. LACV1007278JAKCWX, 2012 WL 12882368, at *11 (C.D. Cal. July 24, 2012) (citing Donovan v. RRL Corp., 26 Cal. 4th 261, 281 (2001)).

The parties dispute whether DenMat knew that CAO Group was using its own internal costs to benchmark the sales prices fixed in the Manufacturing Agreement. CAO Group provides evidence that when the parties negotiated these prices ($1,199 per SOL laser kit, $1,029 per NV laser kit, and $1.95 per laser tip), M. Agmt. § (5.2), CAO Group used its own cost estimates to determine these prices, understanding that, over time, it would be able to use its own vendors and components to manufacture products for DenMat. Dkt. 55-23, Declaration of Densen Cao ("Cao Decl. II") at ¶¶ 63–67. CAO Group offers evidence that it submitted its own "calculated pricing information to DenMat, which was based on CAO's estimation of its costs to make the products[.]" Id. ¶ 64. DenMat disputes that it was aware of CAO Group's estimated costs or that CAO Group considered these costs in negotiating the sales prices specified in the Manufacturing Agreement. Casper Decl. I. at ¶ 10. This dispute regarding whether DenMat knew of CAO Group's perceived basis for the Manufacturing Agreement's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

pricing term alone precludes summary judgment as to CAO Group's rescission claim. <u>Neoris de Mexico, S.A. De C.V. v. Ariba Inc.</u>, No. C 02-01670 JSW, 2005 WL 947032, at *3 (N.D. Cal. Apr. 25, 2005) (noting that element of rescission claim requires that "other party knew of or caused the mistake," and finding that "existence of genuine issues of material fact . . . precludes summary judgment").

The parties also dispute whether it would be unconscionable for CAO Group to manufacture products for DenMat using only DenMat's approved vendors and components. D. Mot. at 24; C. Opp. at 25. Dr. Cao maintains that CAO Group could not profitably manufacture products using only DenMat's approved vendors and components, and it would not have entered the Manufacturing Agreement had it known DenMat would not allow it to use alternative vendors and components. Cao Decl. II ¶¶ 90–93; D. Opp. at 25. David Casper, DenMat's CEO, disputes that CAO Group could not have profitably manufactured products using DenMat's approved components and vendors. Casper Decl. II ¶ 11. Because the Court cannot resolve whether CAO Group could have profitably manufactured products using only DenMat's approved vendors and components, the Court cannot determine whether enforcing CAO Group's purported unilateral mistake would be sufficiently "overly harsh or one-sided" to justify rescission. <u>Donovan</u>, 26 Cal. 4th at 291.

### D.   The Parties' Unjust Enrichment Claims

DenMat and CAO Group each assert claims for unjust enrichment. <u>See</u> Compl. ¶ 47; Countercl. ¶ 104. The parties elsewhere contend that California courts do not recognize unjust enrichment as a cause of action. D. Mot. at 24 n.7; C. Mot. at 24. The Court agrees with the parties' contentions that unjust enrichment is not, itself, a cognizable claim under California law.

Unjust enrichment is not a claim for relief but instead a "general principle underlying various legal doctrines and remedies" that "is synonymous with restitution." <u>Rosal v. First Fed. Bank of California</u>, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) (collecting cases). A court may award restitution under an unjust enrichment theory in two scenarios: (1) the parties' express contract was procured by fraud or is otherwise unenforceable; or (2) the defendant extracted a benefit from plaintiff by fraud, duress, conversion, or similar conduct. <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 388 (2004). In these cases, courts imply a "quasi-contract" to avoid one party's unjust enrichment. <u>Id.</u>

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|----------|-------------------------|------|-----------------|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

DenMat and CAO Group agree that the License and Manufacturing Agreements were valid and enforceable at the time the parties executed them. DSUF No. 87; C. Mot. at 24; D. Mot. at 24. Under California law, no unjust enrichment claim lies "when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); accord Exp.-Imp. Bank of the U.S. v. United Cal. Disc. Corp., 738 F. Supp. 2d 1047, 1060 (C.D. Cal. 2010) (granting summary judgment on unjust enrichment claims asserted under California law where binding and enforceable agreements between the parties exist). Therefore, the parties' claims for unjust enrichment fail as a matter of law.[13]

## E.      CAO Group's Permanent Injunction Claim

CAO Group asserts a claim for "Permanent Injunction," seeking an order "enjoining DenMat from manufacturing, selling, distributing or otherwise commercializing the Products." Countercl. ¶ 112. Though not specifically addressed by the parties, the Court notes that "an injunction is a remedy, not a cause of action." Roberts v. Los Angeles Cty. Bar Assn., 105 Cal. App. 4th 604, 618 (2003). A permanent injunction is "a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a defendant and that equitable relief is appropriate." Benasra v. Mitchell Silberberg & Knupp, 96 Cal. App. 4th 96, 110 (2002). Because triable issues regarding CAO Group's claims for relief remain, the Court declines to adjudicate CAO Group's request at this time.[14]

---

[13]      During oral argument, counsel for DenMat asserted that, although styled as a claim for unjust enrichment, DenMat seeks relief pursuant to the California common law doctrine of "money had, money received." The Court reserves judgment as to whether it would be unduly prejudicial to CAO Group for DenMat to assert this theory. Accordingly, the grant of summary judgment as to the claim for unjust enrichment is without prejudice to DenMat seeking leave to add a claim based on money had and received or a similar continuous count.

[14]      See Tater-Alexander v. Amerjan, No. 1:08-CV-00372 OWW, 2011 WL 319012, at *12 (E.D. Cal. Jan. 28, 2011) (finding that where other causes of action raise triable issues, "[i]t is premature to summarily adjudicate" a request for injunctive relief styled as a cause of action.).

| Case No. | 2:18-cv-06358-CAS(JEMx) | Date | August 19, 2019 |
|---|---|---|---|
| Title | DEN-MAT HOLDINGS, LLC v. CAO GROUP, INC. | | |

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS**, in part, and **DENIES**, in part, DenMat's motion for partial summary judgment.  Specifically, the Court **GRANTS** DenMat's motion with respect to CAO Group's sixth claim for unjust enrichment.  The Court otherwise **DENIES** the motion.

The Court **GRANTS**, in part, and **DENIES**, in part, CAO Group's motion for partial summary judgment.  Specifically, the Court **GRANTS** CAO Group's motion with respect to DenMat's second claim for unjust enrichment.  The Court otherwise **DENIES** the motion.

IT IS SO ORDERED.

|  | 00 | : | 15 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |